AO 106 (Rev. 04/10) Application for a Search Warrant

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas ▼

FEB 2 1 2024

By Ronald E. Dowling
Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
THE PROPERTY AND RESIDENCE LOCATED AT 2540 )
APPLEGLEN STREET, SPRINGDALE, ARKANSAS )
72764 )

Case No. 5:24 cm 17

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____Western_____ District of _____Arkansas_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) | Controlled Substance Offenses |
| 21 U.S.C. 846 | Conspiracy |
| 18 U.S.C. 1956 & 1957 | Money Laundering |

The application is based on these facts:
See Attached Afftdavit of DEA TFO Chase Young

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA TFO Chase Young
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 21, 2024 @ 1:06pm

City and state: Fayetteville, AR

_____
*Judge's signature*

Christy Comstock U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**PREMISES TO BE SEARCHED**

This residence is located at 2540 Appleglen Street in Springdale, Arkansas, located in the Western District of Arkansas. This residence is described as a single-family dwelling, red brick, and gray trim. The numbers "2450" are displayed directly above the garage door. The coordinates for 2540 Appleglen Street in Springdale, Arkansas are 36.16148 N, Latitude, 94.10662 W, Longitude.



## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR

There is now being concealed certain property, namely evidence of violations of Title 21, United States Code, Section 841(a)(1)(distribution of possession with intent to distribute a controlled substance); Title 21, United States Code, Section 846 (conspiracy to commit controlled substance offense); and Title 18, United States Code, Sections 1956 & 1957 (money laundering). These offenses and proceeds earned from unlawful activities will be concealed or hidden to disguise the true nature, ownership, and control of the unlawful proceeds in furtherance of illegal activity including, but not by way of limitation, items of a specie hereinafter described as follows:

1.  Equipment, books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular fentanyl.

2.  Addresses or telephone books and papers, and cellular phones and the contents thereof, reflecting names, addresses or telephone numbers.

3.  Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders, bank checks, deposit checks, safe deposit keys, safe deposit records, credit account statements, applications for credit, credit transaction documents, loan and mortgage documents, records showing participation in partnership, ventures and corporations, records showing investments, titles and registrations for boats and automobiles and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money or assets in violation of 21 U.S.C. §§ 841(a)(1) and 846.

4.    United States currency, precious metals, jewelry and financial instruments including, but not limited to stocks and bonds.

5.    Photographs and video tapes, in particular, photographs and video tapes of co-conspirators, assets, firearms, and/or controlled substances.

6.    Computers, computer records, computer disks, and other magnetic media, in particular, computer record/documentation evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money, assets and controlled substances.

7.    Firearms or weapons or any sort.

8.    Controlled substances.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

IN THE MATTER OF THE SEARCH OF
THE PROPERTY AND RESIDENCE
LOCATED AT 2540 APPLEGLEN STREET,
SPRINGDALE, ARKANSAS 72764

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Chase Young, being first duly sworn, hereby depose and state as follows:

**PURPOSE OF AFFIDAVIT**

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 for the residence located at 2540 Appleglen Street,

Springdale, Arkansas 72764 (hereinafter, "Target Residence"), located in the Western District of

Arkansas. The Target Residence is further described in Attachment A as a single-family

dwelling. Photographs of Target Residence are attached to Attachment A.

2.      For the reasons set forth below, your affiant has probable cause to believe that

Target Residence contains items that constitute evidence, fruits, and instrumentalities of

violations of Title 21, United States Code, Section 841(a)(1)(distribution of possession with

intent to distribute a controlled substance); Title 21, United States Code, Section 846 (conspiracy

to commit controlled substance offense); and Title 18, United States Code, Sections 1956 and

1957 (money laundering). Your affiant further submits that a search of the Target Residence will

result in the discovery of items that constitute evidence, fruits, and instrumentalities of such

activity.

3.      Based upon your affiant's training, experience, shared experience with other agents

and officers with whom he has worked, and participation in other investigations involving large

1

amounts of methamphetamine, cocaine, heroin, fentanyl, marijuana and/or other Controlled Substances, your affiant knows the following to be true:

a.       That drug distributors often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by law enforcement authorities;

b.       That even though these assets are in names other than the drug distributors', the drug distributors actually own and continue to use these assets, and exercise dominion and control over them;

c.       That drug distributors often possess large amounts of United States currency in order to maintain and finance their on-going drug business;

d.       That it is common for drug distributors to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

e.       That it is common for drug distributors to conceal contraband, proceeds of illegal drug sales, and records of drug transactions in secure locations within their residences, their businesses, their vehicles, and/or other locations which they maintain dominion and control over for ready access, and to conceal these items from law enforcement authorities;

2

f.      That in-order-to accomplish this concealment, drug distributors frequently build "stash" places within their residences, vehicles, or businesses.  There are a number of publications available instructing where and how to build "stash" places.  Copies of these types of publications have been found in the residences of drug distributors;

g.      That it is common for persons involved in drug distribution to maintain evidence pertaining to their obtaining, secreting, transfer, concealment, and/or expenditure of drug proceeds, such as: currency, financial instruments, precious metals, and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements, and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers.  These items are maintained by the drug distributors within their residences, vehicles, businesses or other locations, which they maintain dominion and control over;

h.      That drug distributors often utilize electronic equipment such as cellular telephones, SIM cards, computers, flash drives, external hard drives, multimedia devices, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in items a, b, d, e, and g above, and q and r below;

3

      i.     That when drug distributors amass large proceeds from the sale of drugs, the drug distributors may attempt to legitimize these profits through various money laundering methods. To accomplish these goals, drug distributors utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency;

      j.     That the sale of methamphetamine, cocaine, heroin, fentanyl, marijuana and other Controlled Dangerous Substances generates large quantities of United States currency in small denominations (commonly referred to as "street money");

      k.     That it is common for drug distributors to physically handle and count the "street money" after receiving it in exchange for the Controlled Dangerous Substances, thereby leaving residue traces of Controlled Dangerous Substances on the "street money." Law enforcement agencies utilize dogs which are trained to react to the odor of Controlled Dangerous Substances and residue traces of Controlled Dangerous Substances; and that those trained dogs have reacted to drug tainted currency negotiated at banks and concealed in the residences of drug traffickers;

      l.     That it is common for drug distributors to separate their "street money" by denomination and put this currency in rubber banded stacks in varying increments to facilitate quick counting;

      m.     That it is recognized, and Courts have held, that the small and medium denominations of questionable currency, along with the manner in which the currency is handled,

4

carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and drug transactions, i.e. proceeds of illegal narcotic sales;

n.   That the Currency Transaction Report (CTR) (IRS Form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction which exceeds $10,000, causes tremendous problems for drug distributors when they attempt to negotiate their illegal profits at financial institutions;

o.   That, in order to avoid the filing of a Currency Transaction Report, drug distributors often "structure" their currency transactions so that no one transaction exceeds $10,000, or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency;

p.   That drug distributors at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies.  In order to legitimize their spending, these distributors file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel, can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms.  Retained copies of these returns are commonly kept by the traffickers in their residences and businesses;

q.   That distributors of illegal drugs commonly maintain addresses or telephone numbers in books or papers ("ledgers") which reflect names, addresses and/or telephone numbers of their associates in the drug trafficking organization;

5

r.      That drug distributors take or cause to be taken photographs of themselves, their associates, their property and their product. That these distributors usually maintain these photographs in their possession, or in their residences and/or vehicles;

s.      That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances;

t.      That drug distributors commonly have in their possession, that is, on their person, at their residences, in their vehicles, and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug distributor's property. Such property may include, but is not limited to: illegal drugs, jewelry, vehicles, drug paraphernalia, books, records, and United States currency;

u.      That the target(s) of this investigation are engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), conspiracy to commit the aforementioned crimes, in violation of Title 21, United States Code, Section 846; and Title 18, United States Code, Section 1956(a)(1) (Laundering of Monetary Instruments)

v.      That the evidence sought through the use of the search warrant listed herein will provide investigators with admissible evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs; and,

6

w.     That there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application, which is located within the Western District of Arkansas.

4.     The information contained in this affidavit is based upon information provided by other DEA special agents/TFOs, other federal, state and local law enforcement officers, public source documents, and your affiant's own personal investigation.

5.     Since this affidavit is for the limited purpose of establishing probable cause to support a search warrant, it contains only a summary of facts necessary to establish probable cause.  Your affiant has not included each and every fact known to your affiant concerning the entities, individuals, and the events described in this affidavit.

## INTRODUCTION AND AGENT BACKGROUND

6.     Your affiant is a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration ("DEA") and has been assigned with the DEA since August 2022. Your affiant is a criminal investigator for the United States within the meaning of Title 21, United States Code, Section 878, and therefore your affiant is empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 21.  Accordingly, your affiant is a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

7.     Your affiant has been employed by the Crawford County Sheriff's Office (CCSO), Van Buren, Arkansas, since 2013. During your affiant's employment with the CCSO, your affiant was assigned to the Criminal Investigation Division (CID) in June 2020 until August 2022.  Your affiant has been involved in numerous aspects of drug investigations, including, but

7

not limited to, conducting controlled purchases of illegal drugs; utilizing confidential sources; debriefing defendants, witnesses, and informants; conducting surveillance and undercover operations; preparing and executing search warrants; analyzing documentary and physical evidence, and analyzing phone toll records.

8.      In the course of your affiant's career, your affiant has been the affiant of, and/or participated in, numerous search warrants involving the law enforcement seizure of controlled substances, documents associated with the sale of controlled substances and proceeds from the sale of illicit drugs.

## PROBABLE CAUSE

9.      The United States, including the DEA, is conducting a criminal investigation into Juan Valentine ZAVALA-Cortez Drug Trafficking Organization (DTO) based in the Western District of Arkansas (WDAR), and elsewhere. The investigation has revealed that ZAVALA-Cortez is based in Mexico, where he communicates with drug customers in the Western District of Arkansas who make drug orders directly with ZAVALA-Cortez, who then dispatches drug suppliers and couriers in his employ local to Northwest Arkansas to fill the drug order.  The DTO cell in Arkansas receives illegal drug shipments from California, Nevada, Oklahoma and elsewhere. This DTO is known to your Affiant to sell methamphetamine, heroin, fentanyl powder, "fake" Oxycontin pills laced with fentanyl, cocaine and marijuana.

10.     This investigation has tentatively identified a drug distributor for this DTO, as JESUS MALDONADO RAMIREZ. Your Affiant only knows RAMIREZ by this name because this is the name used on the Arkansas registration for the vehicle known to be operated by this subject, discussed below. (*Affiant's NOTE: Your Affiant knows that drug traffickers commonly use aliases or fake names when involved in illegal activity.*)

8

CONTROLLED PURCHASE OF ½ OF AN OUNCE OF FENTANYL FROM RAMIREZ ON NOVEMBER 28, 2023

11.     On November 28, 2023, agents formulated a plan to utilize a Confidential Source (CS)[1] to affect a controlled purchase of approximately ½ of an ounce of fentanyl powder from ZAVALA-Cortez, through one of ZAVALA-Cortez's drug distributors based in Northwest Arkansas.

12.     On November 28, 2023, the CS and ZAVALA-Cortez exchanged a series of wire, electronic, and social media communications regarding the CS's purchase of fentanyl from one of ZAVALA-Cortez's drug distributors local to Northwest Arkansas. Later on this date, ZAVALA-Cortez agreed to sell the CS ½ of an ounce of fentanyl. ZAVALA-Cortez later sent the CS the address of a public place in Northwest Arkansas, which the CS was expected to travel to in order to purchase the fentanyl.

13.     On November 28, 2023, law enforcement met with the CS at a predetermined location. Law enforcement searched the CS and his/her vehicle for U.S. currency and contraband with negative results. Law enforcement provided the CS with clear and concise instructions to be followed during this controlled purchase. Law enforcement provided the CS with a quantity of Official Advanced Funds (OAF), which was to be used to purchase the fentanyl. Law enforcement also supplied the CS with an audio/video recording device used to monitor and record this incident.

---

[1] The CS's motivation to cooperate with law enforcement are in hopes of receiving leniency for pending drug-related charges filed against him/her. The statements provided by the CS have proven to be reliable through the CS's own admissions, law enforcement databases, phone-toll analysis, and corroborated statements provided by other confidential sources and sources of information involved in this same investigation. Your Affiant believes that this CS's statements can be trusted as true and accurate.

14.     A short time after arrangements were made, ZAVALA-Cortez informed the CS that he had sent his driver to the meet location. Soon after, agents observed a gold-colored Honda Accord, bearing Arkansas license plate number AUl73G (registered on a gold colored 2000 Honda Accord, to Jesus Maldonado Ramirez, at 2540 Appleglen, Springdale, AR 72764 – the Target Residence here), drive past the CS's vehicle. The CS's vehicle immediately began following the gold Honda Accord. Agents followed both vehicles into a nearby neighborhood. A short time later, agents observed the CS's vehicle and the gold Honda Accord meeting window-to-window at the end of a dead-end residential street. A short time later, both vehicles departed the area in separate directions.

15.     The CS was followed directly back to a predetermined meet location where he/she handed agents a quantity of fentanyl he/she stated he/she purchased from the driver of the gold Honda Accord. The CS confirmed the hand-to-hand exchange occurred when both vehicles were window-to-window to each other on the dead-end residential street. The CS described the driver of the gold Honda Accord as an older Hispanic male, wearing a baseball hat.

16.     Upon a later review of the audio/video recording device, agents confirmed the driver of the gold Honda Accord supplied the CS with a quantity of fentanyl, while window-to-window with the CS's vehicle. Law enforcement also confirmed the driver of the gold Honda Accord was wearing a baseball hat, and appeared to be a Hispanic male.

17.     The purchased fentanyl was later analyzed by a DEA drug laboratory, which confirmed the substance purchased during this incident as fentanyl (N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide (Fentanyl) Hydrochloride).

10

SURVEILLANCE OF TARGET RESIDENCE ON NOVEMBER 29, 2023

18.    On November 29, 2023, at approximately 8:55 a.m., agents conducted drive-by surveillance of the Target Residence. During this surveillance, agents observed the aforementioned gold Honda Accord (bearing Arkansas license plate AUI73G), parked directly in front of the Target Residence. As previously noted, the Target Residence, is the registered address on the aforementioned gold Honda Accord.

SEARCH WARRANT OBTAINED – GPS TRACKING SYSTEM – GOLD HONDA ACCORD

19.    On December 5, 2023, the Honorable Christy Comstock, United States Magistrate Judge, Western District of Arkansas (WDAR), signed a search and seizure warrant (Case No.: 5:23CM57), authorizing agents to install a Global Positioning System (GPS) tracking device onto the aforementioned gold colored Honda Accord (bearing Arkansas license plate AUI73G), and to monitor the GPS coordinates from this device for a period of 45-days (expiring on January 19, 2024).

20.    Once the GPS tracking device was placed onto this vehicle, agents began monitoring this device. During the monitoring of this device, agents discovered the tracking device on this vehicle showed a pattern of remaining parked overnight at or near the Target Residence.

21.    On several occasions, agents discovered this tracking device to display movement behaviors consistent with the driving behaviors seen during the controlled purchase operations described as having occurred on November 28, 2023 earlier in this affidavit. Specifically, the tracking device would enter into a residential neighborhood, make several turns, never park for an extended period of time, and later depart the neighborhood a short-time later.

11

## CONTROLLED PURCHASE OF ½ OF AN OUNCE OF FENTANYL FROM RAMIREZ ON JANUARY 25, 2024

22.     On January 25, 2024, agents formulated a plan to utilize the aforementioned CS to affect a controlled purchase of approximately ½ of an ounce of fentanyl powder from ZAVALA-Cortez, through one of ZAVALA-Cortez's drug distributors based in Northwest Arkansas.

23.     On January 25, 2024, the CS was directed to place a recorded phone call to ZAVALA-Cortez. The purpose of this phone call was to inform ZAVALA-Cortez the CS wished to purchase ½ of an ounce of Fentanyl. During this call, the CS informed ZAVALA-Cortez he/she was in the area of Fayetteville, Arkansas. ZAVALA-Cortez then asked the CS, "What do you need?" The CS replied, "Uh, I need a half ounce." ZAVALA-Cortez told the CS to give him a second. A short time later, the phone call ended. The CS was directed to place another recorded phone call to ZAVALA-Cortez. During this call, the CS informed ZAVALA-Cortez he/she was just waiting on ZAVALA-Cortez to supply him/her with an address. A short time later, ZAVALA-Cortez provided the CS with an address in Rogers, Arkansas.

24.     On January 25, 2024, law enforcement met with the CS at a predetermined location. Law enforcement searched the CS and his/her vehicle for U.S. currency and contraband with negative results. Law enforcement provided the CS with clear and concise instructions to be followed during this controlled purchase. Law enforcement provided the CS with a quantity of OAF, which were to be used to purchase the fentanyl. Law enforcement also supplied the CS with an audio/video recording device used to monitor and record this incident.

25.     Agents then travelled to the meet location in Rogers, Arkansas, and established surveillance.

26.     Agents followed the CS as he/she travelled directly to the meet location. Just prior to the CS's arrival to the meet location, the CS received a telephone call (recorded) from

12

ZAVALA-Cortez. During this phone call, ZAVALA-Cortez could be heard inquiring about where the CS was. ZAVALA-Cortez appeared to be upset with the CS. ZAVALA-Cortez stated the following to the CS, "I'm talking with my driver bro, he's already there, man...you just fucked up." ZAVALA-Cortez told the CS to hurry up.

27.     Agents observed a gold-colored Honda Accord (bearing Arkansas license plate AUI73G – same vehicle from the controlled purchase on November 28, 2023) making several loops around the meet location. Agents observed the CS arrive at the meet location while other agents observed the gold-colored Honda arrive at the meet location and slowly drive past. The CS followed the gold-colored Honda to a nearby residential area, making several turns. Agents then observed the Honda drive towards the CS's driver's window and stop, window-to-window. Seconds later, both vehicles departed the area in separate directions.

28.     The CS was followed directly back to a predetermined meet location where he/she handed law enforcement a quantity of fentanyl he/she stated he/she purchased from the driver of the gold-colored Honda Accord. The CS confirmed the hand-to-hand exchange occurred when both vehicles were window-to-window to each other on the dead-end residential street. The CS described the driver of the gold-colored Honda Accord as an older Hispanic male, wearing a baseball hat. The CS confirmed the driver of the gold Honda was the same person he/she acquired fentanyl from during the November 28, 2023, purchase of fentanyl.

29.     Immediately after this incident, agents followed the gold Honda Accord as it departed the area. Due to heavy traffic, agents lost sight of this vehicle for a short period of time, only to re-acquire this vehicle parked at a known Money Service Business (MSB) location: either the Supermercado El Ranchito or Tax Services, located at 1900 W. Huntsville Avenue, Springdale, Arkansas. (*Affiant's NOTE: Your Affiant knows that drug distributors for this DTO*

13

*frequently launder drug proceeds through MSBs. Observing that the gold Honda Accord*

*travelled to an MSB location directly after selling a quantity of fentanyl to a CS for a cash*

*payment is commonly seen by drug distributors.*)

30.     Upon reviewing the audio/video recording device provided to the CS, agents

determined the video showed RAMIREZ as the driver of the gold Honda Accord.

31.     The purchased fentanyl was later analyzed by a DEA drug laboratory, which

confirmed the substance purchased during this incident as fentanyl (N-Phenyl-N-[1-(2-

phenylethyl)-4-piperidinyl]propanamide (Fentanyl) Hydrochloride).

## SECOND SEARCH WARRANT OBTAINED – GPS TRACKING SYSTEM – GOLD HONDA ACCORD

32.     On January 29, 2024, the Honorable Christy Comstock, United States Magistrate

Judge, WDAR, signed a search and seizure warrant (Case No.: 5:24CM08), authorizing agents to

install a GPS tracking device onto the aforementioned gold colored Honda Accord (bearing

Arkansas license plate AUI73G), and to monitor the GPS coordinates from this device for a

period of 45-days. The tracking device remains in use and is scheduled to expire on expiring on

March 15, 2024.

33.     Beginning on January 29, 2024, agents again began monitoring the GPS tracking

device on the gold Honda Accord. During the monitoring of this device, agents discovered the

tracking device on this vehicle continued to show a pattern of remaining parked overnight at or

near the Target Residence.

34.     On several occasions, agents discovered this tracking device to display movement

behaviors consistent with the driving behaviors seen during the controlled purchases operations

described in this affidavit. Specifically, the tracking device would enter into a residential

14

neighborhood, make several turns, never park for an extended period of time, and later depart the neighborhood a short-time later.

35.     Agents also continued to observe occasions where the tracking device was observed parking at known MSB locations. The following is a list of dates and approximate times in which the tracking device was observed parked near these MSB locations:

a.     January 30, 2024, between 7:50 p.m., and 8:13 p.m., La Estrella 3 (Los Alamos), 503 Holcomb Street, Suite B, Springdale, AR.

b.     February 1, 2024, between 7:09 p.m., and 7:40 p.m., La Estrella 3 (Los Alamos), 503 Holcomb Street, Suite B, Springdale, AR.

c.     February 2, 2024, between 6:58 p.m., and 7:06 p.m., Antojitos Las Delicias, 3206 S. Thompson Street, Springdale, AR.

d.     February 3, 2024, between 4:48 p.m., and 5:07 p.m., Supermercado El Ranchito or Tax Services, 1900 W. Huntsville Avenue, Springdale, AR.

(*Affiant's NOTE: Your Affiant knows this DTO commonly launders drug proceeds through MSBs. Your Affiant has witnessed first-hand previous distributors travelling to the locations listed above to launder drug proceeds. Some of these previous distributors have already been arrested and convicted of money laundering charges stemming from their known activity at MSB locations in this same area.*)

## CONTROLLED PURCHASE OF ½ OF AN OUNCE OF FENTANYL FROM RAMIREZ ON FEBURARY 1, 2024

36.     On February 1, 2024, agents formulated a plan to utilize the aforementioned CS to affect a controlled purchase of approximately ½ of an ounce of fentanyl powder from ZAVALA-Cortez, through one of ZAVALA-Cortez's drug distributors based in Northwest Arkansas.

37.     On February 1, 2024, agents attempted to establish surveillance in the area of

where the gold Honda Accord (bearing Arkansas license plate AUI73G) was last showing to be

parked (via GPS tracking device). (*Affiant's NOTE: Around this time, the gold Honda Accord*

*was located near a new-construction area near Martin Luther King Jr., Boulevard, in*

*Fayetteville, Arkansas, for an extended period of time. Your Affiant believes RAMIREZ also*

*works in construction*.)

38.     On February 1, 2024, agents met with the CS at a predetermined location. Agents

searched the CS and his/her vehicle for U.S. currency and contraband with negative results.

Agents provided the CS with clear and concise instructions to be followed during this controlled

purchase.

39.     The CS was directed to place a recorded phone call to ZAVALA-Cortez. The

purpose of this phone call was to inform ZAVALA-Cortez that the CS wanted to purchase a ½

ounce of Fentanyl powder. During this call, the CS informed ZAVALA-Cortez he/she was in the

area of Fayetteville, Arkansas. ZAVALA-Cortez responded saying, "Okay, what do you need

bro?" The CS stated they needed a ½ of an ounce and ZAVALA-Cortez stated, "Alright, give me

a second".

40.     The CS later received an SMS text message from ZAVALA-Cortez stating, "half

of half name brand" followed by "half of half name brand clothing".  The CS received another

text message from ZAVALA-Cortez stating, "Half of half name brand clothing 2400 W Sunset

Ave Suite A Springdale AR 72762". ZAVALA-Cortez asked how long the CS would be and the

CS provided and estimated time of arrival.

16

41.     On February 1, 2024, agents provided the CS with a quantity of Official

Advanced Funds (OAF), which was to be used to purchase the fentanyl. Agents also supplied the

CS with an audio/video recording device used to monitor and record this incident

42.     Agents followed the CS as he/she travelled directly to the meet location. Once the

CS arrived to the meet location, the CS parked his/her vehicle.

43.     A short time after the CS arrived to the meet location, agents observed the gold

Honda Accord arrive near the same meet location, which was also confirmed via GPS tracking

device on the vehicle. Agents observed the gold Honda Accord drive by the CS's vehicle. Agents

observed the CS begin to follow the gold Honda Accord into a nearby neighborhood. After a

short amount of time, agents observed gold Honda Accord make a U-turn and pull up window-

to-window to the CS's vehicle.  Agents observed a hand-to-hand transaction between the driver

of the gold Honda Accord and the CS. Immediately afterwards, both vehicles departed the area.

44.     The CS was followed directly back to a predetermined meet location where he/she

handed agents a quantity of fentanyl he/she stated he/she purchased from the driver of the gold-

colored Honda Accord. The CS confirmed the hand-to-hand exchange occurred when both

vehicles were window-to-window to each other on a residential street. The CS described the

driver of the gold Honda Accord as an older Hispanic male, wearing a baseball hat. The CS

confirmed the driver of the gold Honda was the same person he/she had acquired fentanyl from

during the November 28, 2023, and January 25, 2024 purchase of fentanyl.

45.     Upon reviewing the audio/video recording device provided to the CS, agents

determined the video showed the CS meeting with the driver of the gold Honda Accord, who

appeared to be who agents know as RAMIREZ. The video briefly caught footage of RAMIREZ

driving the gold Honda Accord but the exchange of money for drugs was obscured by the CS's hand.

46.     The purchased Fentanyl was submitted to a DEA drug laboratory for analysis. The results of this analysis are still pending.

### SURVEILLANCE OF TARGET RESIDENCE ON FEBRUARY 14, 2024

47.     On February 14, 2024, at approximately 8:30 a.m., SA Matt Barden established surveillance of the Target Residence. At approximately 11:19 a.m., SA Barden observed RAMIREZ walking away from the front of the Target Residence. SA Barden observed RAMIREZ to be wearing a dark colored jacket with white stripe across the front, dark colored pants, dark shoes, and a blue Milwaukee Brewers baseball hat. This is the same attire that RAMIREZ was observed to be wearing on a controlled purchase operation on November 28, 2023.

48.     SA Barden observed RAMIREZ to walk directly to the gold Honda Accord, open the driver's door, enter the vehicle, and retrieve what appeared to be some kind of vehicle fluid container. RAMIREZ then opened the hood and briefly conducted maintenance of the vehicle. RAMIREZ closed the hood, opened the driver's door, and placed the vehicle fluid back inside of the vehicle. SA Barden observed RAMIREZ to walk around the front of the vehicle and open the front passenger side door, reach inside of the vehicle and retrieve a plastic bag that appeared to be full. RAMIREZ then proceeded back to the front of the residence where RAMIREZ walked towards the location of some trash bins located in the yard of the residence. RAMIREZ then walked to the front of the Target Residence and out of SA Barden's view.

## CONCLUSION

49.     Based on the above information, your affiant has reason to believe that concealed within the Target Residence, which is further described in Attachment A, are items that constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1)(distribution of possession with intent to distribute a controlled substance); Title 21, United States Code, Section 846 (conspiracy to commit controlled substance offense); and Title 18, United States Code, Sections 1956 & 1957 (money laundering). Your Affiant furthers believe that a search of this premise will result in the discovery of items that constitute evidence, fruits, and instrumentalities of these activities, specifically, the items listed in Attachment B.

Respectfully submitted,

_____

Chase Young
DEA Task Force Officer

Subscribed and sworn to before me on February 21, 2024

_____

HONORABLE CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

19